DISCIPLINARY COUNSEL *v.* JOHNSON.

[Cite as *Disciplinary Counsel v. Johnson,*
104 Ohio St.3d 313, 2004-Ohio-6555.]

(No. 2004–0432—Submitted August 17, 2004—Decided December 15, 2004.)

**Per Curiam.**

{¶ 1} Respondent, Jacqueline L. Tullos Johnson of New Albany, Ohio, Attorney Registration No. 0029249, was admitted to the practice of law in Ohio in 1982. On November 12, 2003, we indefinitely suspended respondent's license to practice law for seriously mishandling an incarcerated client's company, lying about it, and failing to cooperate in the disciplinary process, among other transgressions. *Disciplinary Counsel v. Johnson,* 100 Ohio St.3d 291, 2003-Ohio-5753, 798 N.E.2d 604.

{¶ 2} While that case was still pending in this court, relator, Disciplinary Counsel, charged respondent with four more counts of professional misconduct, including a violation of Gov.Bar R. V(4)(G) (requiring an attorney to cooperate in an investigation of misconduct). Respondent was served with the complaint but did not answer. On December 22, 2003, relator moved for default, and respondent did not file a response. See Gov.Bar R. V(6)(F). A master commissioner

appointed by the Board of Commissioners on Grievances and Discipline reviewed and granted the motion, making findings of misconduct and a recommendation, all of which the board adopted.

## Misconduct

### Count I—The Pontious Grievance

{¶ 3} Pearl and Geraldine Pontious retained respondent in September 1999 to represent them in a personal-injury action and to prepare wills and powers of attorney for them. The couple agreed to a contingent fee in the civil suit and paid respondent $550 to prepare the estate-planning documents and for the filing fee in the civil case.

{¶ 4} Respondent obtained a judgment for her clients in their personal-injury case; however, she failed during the representation to respond timely to discovery requests and to appear at a scheduled pretrial conference. Because of her inattentiveness, the trial court granted a motion to compel discovery and to exclude certain medical evidence. The trial court also cited respondent for contempt and fined her $250 for failing to appear and show cause why she should not be sanctioned for failing to appear at the pretrial conference.

{¶ 5} Several times during her representation of the Pontiouses, respondent failed to keep scheduled appointments. On one occasion, the Pontiouses arrived at respondent's office for an appointment only to discover that respondent had moved, leaving no forwarding address. As for the estate-planning documents, respondent failed to prepare them.

{¶ 6} The board found that respondent had violated DR 1–102(A)(5) (barring an attorney from engaging in conduct prejudicial to the administration of justice) and 6–101(A)(3) (barring an attorney from neglecting an entrusted legal matter) by failing to conscientiously attend to proceedings involving the Pontiouses' personal-injury action and their estate-planning concerns. The board also found a violation of DR 2–106 (prohibiting an attorney from collecting an excessive fee) because the Pontiouses had paid for documents that respondent never prepared.

### Count II—The Grinnell Grievance

{¶ 7} Tod Grinnell retained respondent in July 2001 to file a bankruptcy petition on his behalf. Grinnell paid respondent $750 in attorney and filing fees. Thereafter, respondent failed to return Grinnell's calls. After Grinnell threatened to file a grievance against respondent because she had not filed his bankruptcy petition, respondent met with him on October 27, 2001, to complete the necessary paperwork. At that time, respondent told Grinnell that the bankruptcy court would send him a case number and a court date.

{¶ 8} In November 2001, respondent sent Grinnell an application to pay the court filing fees in installments. Grinnell called respondent to remind her that he had already given her the money for the filing fee. Respondent told Grinnell she would check his file and call him right back; she never called. In December 2001, Grinnell wrote to respondent and left numerous telephone messages at her office, asking about the status of his case. Respondent did not reply. Grinnell wrote respondent again in January 2002, this time sending the letter by certified mail, but it was returned unclaimed. Respondent never did file the bankruptcy petition.

{¶ 9} The board found that respondent's actions in relation to Grinnell violated DR 2–106 and 6–101(A)(3).

### Count III—The Hoppel Grievance

{¶ 10} In June 2001, Rhonda Hoppel retained respondent to represent her in a domestic-relations case. In August 2002, while still representing Hoppel, respondent hired her to do some office work and to clean respondent's home and office. Respondent wrote a $750 check to compensate Hoppel for her work. The check bounced. Respondent also wrote two other bad checks, one to Hoppel's mother and one to her cousin.

{¶ 11} Hoppel left numerous messages on respondent's voicemail, trying to collect the money respondent owed her. Respondent never returned her calls. On October 4, 2002, when Hoppel finally did reach her, respondent immediately hung up. Later that month, Hoppel asked another attorney for help. The new attorney wrote to respondent but apparently received no reply.

{¶ 12} In November 2002, Hoppel received notice of a hearing on a motion for contempt to be held on November 25, 2002, in her domestic-relations case. She repeatedly tried to contact respondent to find out whether respondent was going to represent her at the hearing. On November 8, 2002, respondent sent Hoppel a letter advising that Hoppel needed to pay $2,000 by November 13 or respondent would withdraw from her case. When Hoppel received the letter on November 12, she left respondent a telephone message, but respondent did not reply until November 18, when she refused to turn over Hoppel's file until Hoppel paid $200 for copies.

{¶ 13} Respondent moved to withdraw as counsel in Hoppel's case, and although the court did not rule on the motion before the contempt hearing, respondent did not appear at the hearing. Hoppel proceeded without counsel, admitted having violated a court order, and was cited for contempt. At Hoppel's request, the court discharged respondent as Hoppel's attorney and ordered respondent to show cause why she should not be found in contempt for failing to appear.

{¶ 14} Respondent was served with notice of the contempt hearing scheduled for January 17, 2003, but she did not appear. The court ordered that a warrant be issued for respondent's arrest but stayed the order provided that she appear at a March 7, 2003 hearing. Respondent also did not appear on that date, and the court issued a bench warrant for her arrest.

{¶ 15} For respondent's conduct with respect to Hoppel, the board found respondent in violation of DR 1–102(A)(5), 1–102(A)(6) (barring conduct that adversely reflects on an attorney's fitness to practice law), 2–110(A)(1) (barring withdrawal from representation without a tribunal's permission), 2–110(A)(2) (barring withdrawal from representation without taking reasonable steps to avoid prejudice to client), 6–101(A)(3), and 7–101(A)(3) (barring intentionally prejudicing or damaging a client).

### Count IV—Failure to Cooperate

{¶ 16} Despite numerous attempts to obtain respondent's cooperation in the disciplinary process, respondent never replied to any of these grievants' allegations. At least six letters of inquiry were returned unclaimed. Moreover, relator alleges that a March 2003 attempt to subpoena respondent failed because the process server found her home at the address on file with the Attorney Registration Section abandoned. In addition, respondent failed to notify the Attorney Registration Section of her business address. For this conduct, the board found that respondent had violated Gov.Bar R. V(4)(G) and VI(1)(D) (requiring attorneys to keep their current residence and office address on file with the Attorney Registration Section).

### Sanction

{¶ 17} In recommending a sanction for this misconduct, the board reviewed the aggravating and mitigating factors listed in Section 10 of Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As an aggravating circumstance, the board found that respondent is already serving an indefinite suspension for misconduct. BCGD Proc.Reg. 10(B)(1)(a). Also in aggravation, the board found a pattern of misconduct and multiple offenses and that respondent had failed to cooperate in the disciplinary process. BCGD Proc.Reg. 10(B)(1)(c), (d), and (e). And because all the misconduct in Count Three of the complaint occurred after the formal complaint had been filed in the earlier disciplinary case, the board found that respondent's "conduct reflected a total disregard" for the authority of courts, the administration of justice, and the interests of her clients. The board found no mitigating evidence.

{¶ 18} Consistent with the relator's suggestion and the master commissioner's recommendation, the board recommended that respondent be permanently disbarred.

{¶ 19} Upon review, we agree that respondent violated DR 1–102(A)(5); 1–102(A)(6); 2–106; 2–110(A)(1) and (2); 6–101(A)(3); and 7–101(A)(3) and Gov.Bar R. V(4)(G) and VI(1)(D), as found by the board. We further find that disbarment is appropriate. Respondent has seriously and repeatedly neglected her clients and has ignored investigative inquiries of grievances against her and resulting disciplinary proceedings. No mitigating evidence justifies leniency.

{¶ 20} Accordingly, respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Jonathan Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.